UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


AWGI, LLC, and SMART MOVE
TRANSPORTATION, LLC,

          Plaintiffs,

vs.                                                    CASE NO. 8:12-CV-2257-T-17MAP


TEAM SMART MOVE, LLC and
RANDAL VIGGIANI,

          Defendants.

_____/

## ORDER

This cause comes before the Court on:

| | |
|---|---|
| Dkt. 11 | Plaintiffs' Motion for Preliminary Injunction and Incorporated Memorandum of Law |
| Dkt. 16 | Opposition |
| Dkt. 35 | Proposed Findings of Fact and Conclusions of Law |
| Dkt. 38 | Opposition |

## BACKGROUND

Plaintiffs, AWGI, LLC ("AWGI") and Smart Move Transportation, LLC ("Smart Move"), assert three separate but related claims in this action:   (1) Trademark Counterfeiting; (2) Trademark Infringement; and (3) False Designation of Origin.  *See* (Dkt. 1).  Plaintiffs are the owners and exclusive licensees of a family of related marks

1

Case No. 8:12-CV-2257-T-17MAP

("Smart Move Marks"):[1]

| Mark | Registration No. | Services |
|------|------------------|----------|
| Smart Move | 3,217,517 | Moving services, namely, planning and implementing moves of homes and offices; non-metal container for the storage and transportation of goods. |
| Smart Move Changing the Way the World Moves | 3,194,122 | Moving services, namely, planning and implementing moves of homes and offices; providing electronic tracking of freight and package information to others; non-metal container for the storage and transportation of goods. |

---

[1] Plaintiff Smart Move's parent company purchased the assets of Smart Move, Inc., in a foreclosure proceeding in 2009.  Plaintiff Smart Move then assigned its right, title, and interest in the Smart Move Marks to Plaintiff AWGI on July 1, 2010.  The Court will refer to Plaintiffs throughout this order without any reference to the assignment and transfer of rights by Plaintiffs' predecessor in interest.

Case No. 8:12-CV-2257-T-17MAP

| Go Smart Move | 3,187,142 | Moving services, namely, planning and implementing moves of homes and offices. |
|---|---|---|

Since as early as 2004, Plaintiffs have offered moving and storage services using the Smart Move Marks.  As a result of using the marks for more than five years, Plaintiffs filed affidavits of incontestability with the United States Patent and Trademark Office ("USPTO").  According to Plaintiffs,  Defendants, Team Smart Move, LLC and Randal Viggiani, use the Smart Move Marks in connection with offering identical moving services.  After a series of "cease and desist" letters and related communications, the substance of which is largely disputed, Plaintiffs filed this lawsuit and sought preliminary injunctive relief enjoining Defendants' alleged infringement of the Smart Move Marks.

In their motion, Plaintiffs reference the trademark infringement claim as the substantive grounds for the injunction but cite to a case interpreting 15 U.S.C. § 1125, which is the statutory provision prohibiting false designation of origin and dilution of trademarks.  *See* (Dkt. 11, p. 6) (quoting *Custom Mfg. & Eng'g, Inc. v. Midway Srvcs., Inc.*, 508 F.3d 641, 647-48 (11th Cir. 2007)).  Because trademark infringement and false origin claims are, as a practical matter, very similar, the Court finds that a decision based on one over the other would not be outcome determinative.  *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1503-04 (11th Cir. 1985) ("The factors relevant to establishing [a false designation of origin claim under 15 U.S.C. § 1125(a)] are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement under 15 U.S.C. § 1114.").  The Court will, therefore, conduct the analysis pursuant to 15 U.S.C. § 1114.

3

Case No. 8:12-CV-2257-T-17MAP

## DISCUSSION

A party seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247-48 (11th Cir. 2002) (internal citations omitted). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion' as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (internal citations omitted).

## A. Likelihood of Success on the Merits

Plaintiffs seek an injunction based on the alleged infringement of their trademarks. *See* (Dkt. 11, p.6). A trademark infringement claim based on a federally registered mark under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) requires proof that: (1) the plaintiff possesses a valid mark, (2) the defendants used the mark in commerce in connection with the sale or advertising of goods or services, and (3) the defendants used the mark in a manner likely to confuse consumers. *Sound Surgical Tech., LLC v. Leonard A. Rubinstein, M.D., P.A.*, 734 F. Supp. 2d 1262, 1268 (M.D. Fla. 2010) (citing *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008)). Defendants raise a challenge to only to first and third prongs of the analysis. Each will be discussed in turn.

A trademark will fall into one of four categories of strength: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary. *See Dieter v. B&H Indust. Of Southwest Florida, Inc.*, 880 F.2d 322, 327 (11th Cir. 1989). On the weaker end of the spectrum, a

4

Case No. 8:12-CV-2257-T-17MAP

"generic" term is one that names "the genus or class of which an individual article or service is but a member." *Id.* (quoting *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 115 (5th Cir. 1979)). "Descriptive terms identify a characteristic or quality of an article or service." *Id.* "Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive." *Id.* (internal citations omitted). "Fanciful or arbitrary terms are words or phrases that bear no direct relationship to the product." *Id.* (internal citations omitted).

Not all trademarks are created equally. On the one end of the spectrum, generic terms are not registrable under the Lanham Act and may be canceled at any time on the grounds that the terms has become generic over time. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985). Descriptive terms, on the other hand, "may be registered only if the registrant shows that it has acquired secondary meaning." *Id.* "A name has acquired secondary meaning when the primary significance of the term in the minds of the [consuming] public is not the product but the producer." *Welding Srvcs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007) (internal citations omitted). "Suggestive and arbitrary or fanciful marks are deemed 'inherently distinctive' because 'their intrinsic nature serves to identify a particular source of a product' and are generally entitled to trademark protection." *Tana v. Dantanna's*, 611 F.3d 767, 774 (11th Cir. 2010) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). Neither party addresses the strength of the marks at issue in this case.

Instead, Plaintiffs assert that the Smart Move Marks are entitled to"incontestable status," (Dkt. 11, p. 6), therefore, according to Plaintiffs, the marks are "presumed to be at least descriptive with secondary meaning, and therefore [] relatively strong mark[s]." *See* (Dkt. 11, p. 7). "To claim such status, a mark holder must file an affidavit setting forth compliance of its mark with all requirements of this section." *Int'l Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1272 at n. 1 (11th Cir. 2006) (citing 15 U.S.C. §

Case No. 8:12-CV-2257-T-17MAP

1065(3)).  Specifically, "[u]nder 15 U.S.C. § 1065, a trademark registration may become incontestable if and when the mark has been in continuous use for 5 years after the initial registration, there is no pending challenge to the validity of the mark, and the registrant files an affidavit with the Commissioner of Patents within one year after the expiration of the initial five-year period, affirming that the mark is still in use." *AFFCO New Zealand, Ltd. v. American Fine Foods Corp.*, 2012 WL 6644997, at *7 (S.D. Fla. Dec. 20, 2012) (quoting *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1206 at n. 1 (11th Cir. 1999)) (emphasis added).  Plaintiffs submitted proof that the marks were registered, *see* (Dkt. 11, Exhibit B), and that they filed an affidavit seeking incontestable status for each of the three marks at issue.  *See* (Dkt. 11, Exhibit D). Accordingly, the Smart Move Marks are entitled to incontestable status.  Once a mark achieves incontestable status, it is presumed valid and is subject to a limited subset of defenses.[2]  *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 938 at n. 34 (11th Cir. 2010).

    The Eleventh Circuit has recognized seven factors to consider when determining whether there is a likelihood of confusion: (1) the type of mark, (2) the similarity of the mark, (3) the similarity of the services or products the marks represent, (4) the similarity of the parties' retail outlets and consumers, (5) the similarity of advertising media, (6) the defendants' intent, and (7) actual confusion.  *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229 (11th Cir. 2008).  The application of the seven factors "entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.'" *Custom Mfg.*, 508 F.3d at 649.  The Eleventh Circuit has long held, however, "that the type of mark and evidence of actual confusion are the most

---

    [2] Plaintiffs assert that as incontestable marks, the Smart Move Marks are "[s]ubject only to certain defenses that are not available to the Defendants." (Dkt. 11, p. 6).  Even a cursory glance at the pertinent statute, *see* 15 U.S.C. § 1115(b)(1)-(9), and Defendants' responsive papers reveals the applicability of certain defenses.  A further discussion of those defenses is unnecessary because the Court finds that Plaintiffs failed to meet their burden of proving infringement based on the record evidence.

Case No. 8:12-CV-2257-T-17MAP

weighty of considerations." *Hi-Tech Pharm., Inc. v. Herbal Health Prod., Inc.*, 132 Fed. App'x 348, 350 (11th Cir. 2005).

The first factor weighs in favor of finding a likelihood of confusion.  Plaintiffs are correct that when a "mark is incontestable, then it is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark." *Dieter*, 880 F.2d at 329; *see, e.g., Caliber Auto.*, 605 F.3d at 939 (holding that district court erred in holding that a mark with incontestable status was not entitled to strong protection).

The second factor weighs in Defendants' favor.  Defendants concede that they use, and have been using since 2005, the mark "Smart Move" in conjunction with the offering of services. *See* (Dkt. 38, Exhibit 1, ¶ 20).  The inquiry does not end merely because the marks use identical words; "[i]n assessing similarity, courts look to the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Star Indus., Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373, (2d Cir. 2005) (affirming district court's finding that Bacardi "O" against a clear background was not similar to the Georgi "O" against a white background and alongside a number of other elements).  Plaintiffs obtained a federal registration to use the "Smart Move" logo with a right-facing arrow dividing the two words. *See* (Dkt. 31, Exhibit 1, ¶ 13).  That logo looks nothing like the lampooned stick figure, comprised of an "S" torso and "M" shaped legs to form the beginning of the phrase "Smart Move," pushing what appears to be freight on a dolly. *See* (Dkt. 11, Exhibit H).  No likely confusion is created by the markedly different graphics used to depict the moving services.

The Court does not find that the third factor necessarily tips the balance in either direction.  "This factor requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling*

Case No. 8:12-CV-2257-T-17MAP

*Enterp., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1338 (11th Cir. 1999). Plaintiffs
posit that the services are identical because "Plaintiff offers moving services and the
Defendants also offer moving services." (Dkt. 11, p. 9). That is perhaps too simple a
view. To be sure, Plaintiffs rely on the affidavit of Todd Suter, Esq., in which Mr. Suter
explains that "Plaintiffs have continued to offer moving and the related services of
storage, freight forwarding and transportation logistics" using the trademark, "Smart
Move." (Dkt. 11, Exhibit 1, ¶ 8). Plaintiffs then posit the apocryphal conclusion that
"Defendants offer the identical services that Smart Moves offers." (Dkt. 11, Exhibit 1, ¶
13). Defendants, however, point out that Plaintiffs "provide PODS-style storage units to
self-movers[,]" whereas Defendants "provide traditional hands-on moving company
services, including packing, unpacking, loading, unloading, and transporting furnishings
and possessions." (Dkt. 38, Exhibit 1, ¶ 29). Although the protection afforded to a
trademark is not necessarily confined to only those goods and services that are
functionally interchangeable, and will often extend to certain areas of non-competing
goods, the services at issue in the extant case present an interesting dynamic. At first
blush it seems inconceivable that the two (both being moving "services" of sorts) would
not be similar. But when viewed with the ultimate purpose of determining whether the
two would be confused with one another, the Court on this record does not find that the
consuming public would view a service with the principle purpose of storage (i.e.,
PODS) and a service with the principle purpose of transportation (i.e., moving service)
as originating from the same source.

On this record, the fourth factor also does not weigh heavily in favor of either
party. "Likelihood of confusion is more probable if the products are sold through the
same channels to the same purchasers." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531,
1541 (11th Cir. 1986). The only proof of similar channels of trade offered by Plaintiffs is

Case No. 8:12-CV-2257-T-17MAP

that both parties use an interactive website[3] that permits customers to fill out a questionnaire and receive a quote for services. Defendants do not dispute using a website to market their services. (Dkt. 38, Exhibit 1, ¶ 29). "This factor takes into consideration where, how, and to whom the parties' products are sold." *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1339 (11th Cir. 1999). Recognizing that the parties' outlets and customer bases need not be identical, the Court must view all factors with the aim of determining whether customers will ultimately be confused by this use. On this record, without any evidence in the overlap in the parties' respective customer bases, the Court finds that the fourth factor tips the balance, if at all, ever so slightly in favor of Defendants.

Likewise, on this record, the Court finds that the fifth factor tips in Defendants' favor. The result here must be tempered by the burden Plaintiffs are required, but failed, to meet at the preliminary injunction stage. It is not enough to rely on the existence of the all too ubiquitous regularity of an Internet presence to meet their burden of establishing that the parties' advertising methods are identical. Beyond advertising on the Internet, Defendants focus the bulk of their marketing efforts on purely local channels, i.e., Polk County newspapers, marketing materials distributed in Polk, Hillsborough, and Orange Counties, and displays at apartment complexes and storage leasing offices in Central Florida. (Dkt. 38, Exhibit 1, ¶¶ 9, 24). It does not appear that Plaintiffs utilize any of the media, other than the Internet, employed by Defendants.

The sixth factor is not easily reconciled in light of the disparate view of the facts each party presents. Reading the facts as Plaintiffs would suggest, "the Defendants have willfully and intentionally misappropriated the good will of Plaintiffs' marks." (Dkt.

---

[3] Plaintiffs' website is located at http://www.gosmartmove.com. Defendants' website is located at http://www.teamsmartmove.com. *See* (Dkt. 11, p. 9).

Case No. 8:12-CV-2257-T-17MAP

11, p. 10).   According to Defendants, Smart Move, Inc., the Plaintiffs' predecessor in interest, would often hire Defendants to transport, load and unload PODS because "they were not licensed to provide and did not provide actual transport of the units or any traditional household moving services." (Dkt. 38, Exhibit 1, ¶ 5). The invoices and checks attached to Mr. Viggiani's declaration show that Defendants worked openly with Plaintiffs' predecessor in interest since 2007.  Beyond that, the recently filed USPTO application shows that Defendants are attempting to distinguish their mark from that of Plaintiffs.  Although the Court will not hold at this stage that this evidences good faith on the part of Defendants, it is hardly sufficient to prove a malicious intent to confuse the public.  *See, e.g., Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1185 (11th Cir. 1985).

The final factor also tips in Defendants' favor.  Despite coexisting for several years, "Plaintiffs are not currently aware of any instances of actual confusion."  (Dkt. 11, p. 10).  "[A]ctual confusion in the consuming public, is the most persuasive evidence in assessing likelihood of confusion."  *Tana*, 611 F.3d at 779; *see also Amstar Corp. V. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980) ( "Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." ).  Plaintiffs' weak showing on the other factors renders the nonexistence of actual confusion after a prolonged period of time even more notable in the extant case.  *See, e.g., Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117 (2d Cir. 2009); *Hubbard Feeds, Inc. v. Animal Feed Supp., Inc.*, 182 F.3d 598, 602-03 (8th Cir. 1999); *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 173 (5th Cir. 1986); *Pignons S.A. de Mecanique de Precision v. Ploariod Corp.*, 657 F.2d 482, 490-91 (1st Cir. 1981).

**B. Irreparable Harm**

In addition to failing to meet their burden of proving a substantial likelihood of

Case No. 8:12-CV-2257-T-17MAP

success on the merits, Plaintiffs have not established that they will suffer irreparable harm. The effect of the Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), on the Eleventh Circuit's previously established case law that afforded a presumption of irreparable harm once a plaintiff established a likelihood of success remains unclear. *See North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227-28 (11th Cir. 2008) ("[W]e decline to express any further opinion with respect to the effect of *eBay* on this case."); *Ford Motor Co. v. O.E. Wheel Distributors*, LLC, 868 F. Supp. 2d 1350, 1373 (M.D. Fla. 2012); *Bentley Motors Limited Corp. v. McEntegart*, 2012 WL 4792820, at *8 (M.D. Fla. Oct. 9, 2012). Plaintiffs offered only a single paragraph, without evidentiary support, arguing that Defendants provide "sub-par, low quality work to the public." (Dkt. 11, p. 11). Colored by the fact that there is no evidence of actual confusion, these unsubstantiated allegations will not suffice in the wake of *eBay* and its progeny.

Because the Court finds that Plaintiffs failed to meet their burden with respect to the first two prongs it need not address the balance of hardships and the public interest inquiries. Accordingly, it is

**ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Dkt. 11) is **DENIED.**

**DONE AND ORDERED** in Chambers in Tampa, Florida this /4th day of March, 2013.

**ELIZABETH A. KOVACHEVICH**
United States District Judge

Copies furnished to:
All Counsel of Record

11